UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X

CELIA BELLINGER,

        Plaintiff,

      - against -

MICHAEL J. ASTRUE, Commissioner
of Social Security,

        Defendant.

------------------------------------------------------------X

**MEMORANDUM
AND ORDER
CV-06-321 (CBA)**

*Gold, S., U. S. Magistrate Judge*:

## Introduction

Plaintiff brings this lawsuit pursuant to Title VII of the Civil Rights Act claiming she was discriminated against because of her gender. Plaintiff's complaint asserts two causes of action, one contending that plaintiff was denied a promotion and a second alleging she received unequal pay. Compl. ¶¶ 90-112; Tr. of 1/26/09, Docket Entry 73, at 11.

Plaintiff has moved to compel answers to interrogatories she served on December 30, 2008 and for sanctions. I heard argument on the motion on July 20, 2009, and reserved decision. For the reasons stated below, plaintiff's motion to compel answers to her interrogatories and for sanctions is denied.

## Facts

Plaintiff Celia Bellinger has been employed by the Social Security Administration ("SSA") for more than 25 years. Compl. ¶ 11; Plaintiff's Memorandum of Law in Support of Her Motion to Compel ("Pl.'s Mem."), Docket Entry 78, at 2. In 1998, Bellinger applied for and obtained a position as a management analyst on the Field Services and Planning Team in the Facilities Management Section ("FMS"). Compl. ¶ 13. The position was designated as a

temporary Grade GS-12. *Id.* ¶ 14; Tr. of 1/26/09 at 4. Plaintiff asserts that her direct supervisor was Eric Schlesinger, the Chief of FMS, and that Schlesinger's supervisor was John McGinley. Compl. ¶ 16. McGinley was the Director of the Center for Material Resources (the "CMR"), a component of the SSA's New York Regional Office ("NYRO"). Defendant's Memorandum of Law in Opposition to Plaintiff's Motion to Compel and for Sanctions (" Def. Mem. of Law"), Docket Entry 85, at 4. According to plaintiff, and as Schlesinger himself has conceded, Schlesinger made a series of disparaging and discriminatory remarks to plaintiff and to other women co-workers. Compl. ¶¶ 16-24; Tr. of 1/26/09 at 4; Affirmation of Elizabeth A. Mason in Support of Motion to Compel and for Sanctions ("Mason Aff."), Docket Entry 79, ¶¶ 27-32.

Plaintiff held the temporary Grade 12 position for more than six years. Compl. ¶ 35. Whenever she sought a permanent position, Schlesinger and McGinley told plaintiff – falsely, according to the complaint – that none were available. *Id.* ¶¶ 36-37, 45. In December 2004, though, plaintiff learned of two vacancies for a permanent Support Services Specialist, a Grade GS-13 position. *Id.* ¶ 51. Plaintiff applied, as did another woman, Renee Watson, who reported to McGinley. *Id.* ¶ 53; Tr. of 1/26/09 at 9-10. Plaintiff and two other men, Ken Schmidt and Steven Chung, were selected as finalists. Compl. ¶ 55. Although plaintiff alleges that she was the most qualified candidate, the positions were awarded to the two male applicants. *Id.* ¶ 57. The decision to promote Schmidt and Chung and not plaintiff was made by John McGinley and Irene Corva, who was at that time the new Director of CMR. *Id.* ¶ 56; Def. Mem. of Law at 5. Count One of the complaint, plaintiff's failure-to-promote claim, is based on the appointment of the two male candidates to the GS-13 Support Services Specialist positions by McGinley and Corva.

Plaintiff also alleges in her complaint that Schlesinger assigned her tasks commensurate with the job responsibilities of a Grade GS-13 employee, even though plaintiff held a GS-12 position at lower pay. Compl. ¶¶ 25-28; Tr. of 1/26/09 at 5-6. Count Two of the complaint, plaintiff's claim of unequal pay, is based on these assignments, and more specifically upon what Bellinger contends is the similarity between the responsibilities Schlesinger gave to her and those he assigned to Steve Hunchik, a male GS-13 management analyst. Compl. ¶¶ 30-31; Tr. of 1/26/09 at 6.

## Discussion

The interrogatories in dispute fall into two discrete categories. Interrogatories 1-11 seek information about various SSA employees working in the NYRO. Interrogatories 13-22 and 24 ask for details regarding the manner in which defendant searched for electronically stored information when responding to plaintiff's document demands and the litigation hold defendant put in place to preserve documents and electronically stored data. I address each group of interrogatories in turn below.

### A.      Interrogatories 1-11

Interrogatories 1 through 11 largely seek detailed information about the job status and career histories of various categories of SSA employees.[1] For example, Interrogatory 4 reads as follows:

---

[1]Interrogatory 1 is an exception, in that it seeks information about why, and at whose direction, plaintiff was at certain times paid with funds drawn from different departments. Defendant has in fact provided the names of the individuals responsible for the decisions. See Declaration of Kathleen A. Mahoney in Support of Defendant's Opposition to Plaintiff's Motion to Compel and for Sanctions ("Mahoney Decl."), Ex. 27 at 5-6. Defendant has also explained the reasons for drawing funds from different departments. Mahoney Decl., Ex. 17 at 5-6.

Identify every person including their sex, age and race who held a temporary position in the New York Regional Office ("NYRO") during the period of January 1, 1998 to present stating: a) their position description, grade, and step prior to entering the temporary position; b) their position description, grade and step upon entering the temporary position; c) their department and can [common accounting number] number while in the temporary position d) the date they entered the temporary position; e) the number of days they were in the temporary position; f) the date they left the temporary position; and g) the reason they left the temporary position (e.g. transfer; permanent; promotion, etc.); h) their position, grade and step after leaving the temporary position; i) their first and second line supervisors while in the temporary position.

Interrogatory 2 seeks similar information for all persons who participated in the same career enhancement program as plaintiff. Interrogatory 3 seeks similar information for all persons supervised by Eric Schlesinger. Interrogatories 5 and 6 seek similar information for employees who worked in the Center where McGinley was the Director. Plaintiff also seeks similarly detailed information with respect to all NYRO employees who received a grade increase or promotion without competition above a GS-8 level for any reason (Interrogatory 7), all positions created or filled in the Center directed by McGinley from 1998 through 2005 (Interrogatory 8), all NYRO employees who received a Quality Step Increase from 2000 through 2006 (Interrogatory 9), all NYRO employees promoted from GS-12 to GS-13 from 2000 through 2006 (Interrogatory 10), and all NYRO emloyees who received a grade increase for any reason from 2000 through 2005 (Interrogatory 11). Defendant objects to the broad scope of these interrogatories, arguing that they seek irrelevant information about employees who are not similarly situated to plaintiff.

Plaintiff has already obtained substantial discovery. First, plaintiff has been provided

with the official personnel files of Schmidt and Chung, the two men who obtained the GS-13

Support Services Specialist positions plaintiff claims she was unlawfully denied; Hunchik, the

GS-13 employee who, according to plaintiff, received the same type of work assignments she

was given as a GS-12; all others who, like plaintiff, held a GS-12 title and worked under

Schlesinger's supervision; a manager who reported directly to Schlesinger; and three employees

directly supervised by Schlesinger but who held titles lower than GS-12. *See, e.g.,* Declaration of

Kathleen A. Mahoney in Support of Defendant's Opposition to Plaintiff's Motion to Compel and

for Sanctions ("Mahoney Decl."), Ex. 27 at 7; Tr. of 7/20/09, Docket Entry 96, at 19-20.

Defendant has also produced three charts in response to plaintiff's interrogatories. These

charts include one listing all NYRO employees who have held temporary positions since 1998 by

name (from which gender may be inferred), effective date and grade; a second identifying all

NYRO employees who were promoted from a GS-12 position to a GS-13 position from 2000

through 2006 by name, date, and work location; and a third listing all CMR employees who were

promoted from a GS-12 position to a GS-13 position from 2000 through 2006, by name, date and

title. Mahoney Decl. Exs. 77, 78 and 79. I have also permitted plaintiff to select twenty

individual employees of NYRO other than those whose personnel files were produced and obtain

information about their grade, seniority, and pay over a three-year period, Tr. of 1/26/09 at 20,

but it is not clear that plaintiff has availed herself of this opportunity.

In addition to the information about various employees described above, defendant has

produced documents reflecting all complaints of discrimination lodged by any SSA employee

against Schlesinger, McGinley, Corva and their supervisor, Julio N. Infiesta, the Assistant

Regional Commissioner for Management and Operations. Defendant has also searched for and

produced all readily accessible emails (those that may be found without restoring old back-up tapes) to or from plaintiff, or that refer to plaintiff, that were sent or received by Infiesta, Corva, McGinley and Schlesinger.  Tr. of 1/30/09, Docket Entry 74, at 7.[2]  I have also granted plaintiff substantial additional electronic discovery, including e-mails on specified subjects that were: exchanged by Schlesinger and McGinley over a period of three years; sent or received by any three co-workers identified by plaintiff over a one-year period; and sent or received by Steve Hunchik over a one-year period.  *Id.* at 11, 23, 26-49.[3]  Finally, plaintiff has deposed Schlesinger, McGinley, Corva and Infiesta.  Tr. of 7/20/09 at 5.

Rule 26(b)(2)(C) of the Federal Rules of Civil Procedure provides as follows:

> On motion or on its own, the court must limit the frequency or extent of discovery . . . if it determines that: (iii) the burden or expense of the proposed discovery outweighs its likely benefit.

The burden of complying with the discovery sought by plaintiff in interrogatories 2 through 11 would be substantial.  NYRO had more than 200 employees during the period relevant to plaintiff's demands, Declaration of Julio N. Infiesta, Docket Entry 88,  ¶ 4, and the charts described above (Mahoney Decl. Exs. 77-79) list a large number of employees.  Moreover, some

---

[2]  According to defendant, documents amounting to more than 10,000 pages had already been produced in this litigation two years ago.  Defendant's Memorandum of Law in Opposition to Plaintiff's Motion to Compel, Inspect and for Sanctions, Docket Entry 36, at 1.  *See also id.*, Appendices A-E, detailing the documents produced by defendant as of July 11, 2007.  The list includes numerous emails and email strings.  For example, defendant identified by Bates number and production date 23 email strings involving Schlesinger and 618 email strings involving Larson, who defendant contends was plaintiff's immediate supervisor, describing plaintiff's job responsibilities during the time she contends she was denied the same pay as men with identical responsibilities.  *Id.*, Appendix B at 30.

[3]  A dispute arose during oral argument with respect to whether defendant has produced additional documents pursuant to orders I issued during two conferences held last January.  Tr. of 7/20/09 at 2-4.  I expect counsel will be able to resolve this issue without court intervention.

of the information requested by plaintiff's interrogatories is not available, and some may be

obtained only by reviewing individual hard copy personnel files for each employee. *Id.* ¶¶ 5-7.

Finally, the interrogatories seek detailed information about the careers of non-parties, and

production would therefore intrude upon the privacy of many individuals who have nothing to do

with the events involved in this case.

The likely benefit of the discovery, on the other hand, is slight or non-existent,

particularly in light of the narrow scope of plaintiff's claims and the broad range of discovery

that has already been produced.[4]  Although plaintiff's interrogatories seek information about a

large number of employees working in various positions under different supervisors, plaintiff

does not allege an agency or office-wide pattern or practice of gender discrimination.  To the

contrary, plaintiff asserts that she "has been employed by the SSA for more than 25 years," but

that *"[h]er problems began* when she was temporarily promoted to a department supervised by

Eric Schlesinger."  Pl.'s Mem. at 2 (emphasis added).  When asked at oral argument on the

pending motion, plaintiff could not point to any basis for alleging a pattern of gender

discrimination at the SSA or at NYRO.  Tr. of 7/20/09 at 20-23.  Each of plaintiff's contentions –

that she was subjected to sexually disparaging remarks, that she received work assignments

---

[4] It appears plaintiff contends that, even where information has already been provided in other forms – affidavits, for example – she is nevertheless entitled to the same information in the form of answers to interrogatories. *See, e.g.,* Tr. of 7/20/09 at 47.  Federal Rules of Civil Procedure 26(b)(2)(C)(I) and (ii) provide, however, that a court may limit discovery sought in one form if it "can be obtained from some other source that is more convenient, less burdensome or less expensive," or where "the party seeking discovery has had ample opportunity to obtain the information by discovery in the action."  While there may be circumstances where interrogatory answers bind a party while discovery from non-parties does not, the affidavits and documents that have been produced by defendant here are largely statements of defendant's agents and records from defendant's files.

comparable to those given to more highly paid men and that she was denied permanent status and promotion to a GS-13 position – involve a particular supervisor and a specific chain of command. Substantial discovery with respect to that supervisor and chain of command has been provided. I have, for example, permitted discovery with respect to Corva and Infiesta, even though plaintiff does not allege that either discriminated against her, because of their supervisory positions with respect to McGinley and Schlesinger. Some general office-wide data, such as that reflected in the charts described above, has been provided as well. Even after having received extensive discovery, however, the only direct evidence of discriminatory animus plaintiff has mustered are the disparaging comments made by Eric Schlesinger, many of which are set forth in her complaint, Compl. ¶¶ 18-24, and each of which Schlesinger has essentially acknowledged. In other words, plaintiff has not identified any significant direct or circumstantial evidence of discriminatory animus that she did not know about when she filed this lawsuit and learned of only through discovery.

Moreover, even if plaintiff were to obtain, for example, the information sought in Interrogatory 4 about which NYRO employees held temporary positions and for how long, the reasons they left the temporary position and who their supervisors were at the time, it is difficult to understand how that information would help a finder determine whether plaintiff was held in a temporary position and denied a promotion, or assigned tasks more appropriately given to a higher-grade employee, because of her gender. Even if such detailed information about each employee were of some utility, conflicts over its significance would undoubtedly arise, resulting in protracted litigation and trial time spent on facts concerning employees with little connection to the core issues in this case. I therefore conclude that the discovery sought in these

interrogatories is not relevant to the parties' claims and defenses, that the interrogatories are not reasonably calculated to lead to the discovery of admissible evidence, and that any benefit that answers to the interrogatories might provide is in any event outweighed by the burdens that compliance would entail. *See* FED. R. CIV. P. 26(b)(1) and (b)(2)(C)(iii).

Although plaintiff contends that the disclosures she seeks to compel are mandated by case law, the precedents she cites do not support her position. Plaintiff relies primarily upon the holding in *Hollander v. American Cyanamid*, 895 F.2d 80 (2d Cir. 1990). After being fired by the defendant, plaintiff Hollander filed a complaint alleging age discrimination. The trial court granted summary judgment to the defendant. The Second Circuit reversed on the ground that Hollander had made a motion to compel discovery that was improperly denied. In his discovery motion, Hollander sought the identity of all management-level employees over the age of forty who where terminated during the eighteen months before Hollander was fired. Although the discovery motion concerned company-wide practices as opposed to details about the circumstances of Hollander's termination, the court held that it should have been granted. 895 F.2d at 84-85.

The holding in *Hollander* fails to support plaintiff's position in this case for several reasons. First, the discovery sought in *Hollander* – a list of persons over forty fired shortly before plaintiff's termination – was much more limited than the extensive, detailed information about each employee plaintiff seeks here. Indeed, the charts provided by defendant, listing all NYRO employees who have held temporary positions since 1998 and those who have been promoted from a GS-12 position to a GS-13 position from 2000 through 2006, more closely resemble the discovery denied by the trial court in *Hollander* than do the interrogatories

9

propounded by plaintiff Bellinger.

Second, as pointed out by the Court in *Tse v. UBS Financial Services, Inc.*, 2005 WL 1949961, at *2 (S.D.N.Y. Aug. 15, 2005), *Hollander* was decided before Federal Rule of Civil Procedure 26(b)(2) was adopted. The Advisory Committee Notes to the 1993 amendments to Rule 26 point out that "[t]he information explosion of recent decades has greatly increased both the potential cost of wide-ranging discovery and the potential for discovery to be used as an instrument for delay or oppression." The rule was accordingly amended "to enable the court to keep tighter rein on the extent of discovery." *See also Duck v. Port Jefferson School District*, 2008 WL 2079916, at *3 (E.D.N.Y. May 14, 2006) (quoting an earlier decision stating that *"Hollander* is not the Circuit's last word on the use of 'other-act' or statistical evidence in discrimination cases").

Finally, subsequent decisions have made it clear that *Hollander* does not permit limitless discovery of a defendant's entire work force, and that courts must impose reasonable limits on the scope of permissible discovery based upon the specific facts of particular cases. *See, e.g., Smith v. Xerox Corp.*, 196 F.3d 358 (2d Cir. 1999) (noting, in the context of a particular statistical argument pressed by plaintiffs, that "[b]ecause intent is the critical issue, only a comparison between persons evaluated by the same decision-maker is probative of discrimination"); *Cronas v. Willis Group Holdings, Ltd.*, 2008 WL 4548861, at *2 (S.D.N.Y. Oct. 8, 2008) (invoking Federal Rule of Civil Procedure 26(b)(2)(C) and denying discovery of centralized employment policies and practices because "[e]vidence of discriminatory acts taken by different supervisors in different offices against different employees would not tend to prove that plaintiffs had suffered discrimination"); *Sundaram v. Brookhaven National Laboratory*,

10

1996 WL 563829, at *2 (E.D.N.Y. Mar. 11, 1996) (denying demand for discovery concerning

employees outside of plaintiff's "work unit").

For all these reasons, plaintiff's motion to compel answers to Interrogatories 1 through 11

is denied.

**B.    Interrogatories 13-22 and 24**

This second group of interrogatories seeks detailed information about defendant's

electronically stored information.  For example, Interrogatory 13 reads as follows:

> Identify each and every location (including computers, network
> servers, hard drives, mainframes, storage media, back up tapes,
> disks, and every other type of storage medium used) where Eric
> Schlesinger's emails and attachments have been stored,
> maintained, backed-up, and archived for the period of January 1,
> 2000 to present date.  For each location identified, state in detail: a)
> what the records consist of including the type of documents,
> number of documents, dates, addressees, subjects; b) each form of
> backup c) each form that the data exists in; d) what protocol is in
> place to preserve the integrity of the data and to prevent deletion of
> the data, e) what effect if any a litigation hold is protecting against
> any modifications or deletions to the data, and f) if any
> modifications or deletions have been made to the data, and if so by
> whom, when, why and to what extent.

Interrogatory 14 seeks similar information with respect to Schlesinger's word processing

documents, and Interrogatories 15 and 16 seek similar information with respect to John

McGinley's emails and word processing documents.  Interrogatory 17 seeks technical

information about computers used by Hunchik and Infiesta.  The level of detail sought in

Interrogatory 17 is instructive and bears quoting:

> Provide the following information for each computer network in
> operation which maintained the computers used by Steven Hunchik
> and Julio Infiesta, for each year commencing January 1, 2000 and
> continuing until December 31, 2005, and indicating the dates of

use for each software and hardware identified: a. brand and version number of the network operating system in use, including the hardware server used for the email system and all word processing documents; b. quantity and configuration of the network servers and work stations used; c. identity of the persons responsible for the operation, maintenance, expansion and upkeep of each network identified; e. the backup programs used to back up each user's email and manner of backup for each network identified; f. the communications capability for terminal to mainframe emulation, data download and data upload capability to mainframe, and computer to computer connections via network for each network identified.

Interrogatories 18-21 seek detailed information about the defendant's search for electronically stored information responsive to plaintiff's discovery demands. Interrogatory 18 is illustrative, and reads as follows:

Provide the following information regarding defendant's search for documents and information in this case that was sent by, received by or created by Eric Schlesinger during the period of January 1, 1998 to present: A. State in detail the exact information and/or documents that defendant searched for; and for each piece of information and/or document that defendant searched for, provide the following information: 1. each of the places and dates where the information was searched for; 2. state in detail how defendant determined where to search for each piece of information; 3. state in detail what were the exact search terms and search parameters that were used for each search; 4. identify each and every person who carried out the search, and state with detail what their involvement was; 5. state in detail the outcome of each search, including the number of documents located, the identity of the documents located, each of the persons who handled the documents; 6. state whether exact copies of the search terms, data bases, and results were saved, and if so by whom; 7. the bates numbers of the documents produced; 8. if defendant is aware of the destruction or loss of any documents, please state the date of destruction or loss, when the destruction or loss was known, who was the custodian at the time, the identity of each person having knowledge of the destruction or loss; the exact description of each document that has been destroyed or lost, and defendants' efforts to recover the documents that have been destroyed or lost.

Interrogatory 22 seeks detailed information about computers used by Hunchik, Infiesta and Corva from 2002 through 2006. Interrogatory 24 asks defendant for information about litigation holds.

These interrogatories seek information that is both very detailed and technically complex, and it is clear that responding to them would be extremely burdensome. Moreover, the information sought is unlikely to be of significant value, especially in light of the discovery that defendant has already provided.

Plaintiff nevertheless argues that she is entitled to the information sought in these interrogatories. Plaintiff first asserts that the disclosures are required by Federal Rule of Civil Procedure 26. While Rule 26(a)(1)(A)(ii) requires a party to produce a copy, or a description by category and location, of documents in its possession, custody and control that it may use to support its claims or defenses, it hardly compels the extensive discovery plaintiff seeks here.

Plaintiff also contends that she is entitled to the information sought by her interrogatories "because Defendant has wrongfully withheld highly probative evidence, and made false statements regarding why the evidence has been withheld." Pl.'s Mem. at 17; Mason Aff., ¶¶ 23-25. In fact, during oral argument on the pending motion, plaintiff's counsel insisted that she was not aware of even ten emails that had been produced. Tr. of 7/20/09 at 37-38. Having reviewed the affidavits and exhibits submitted in connection with the pending motion, and based upon my familiarity with the prior proceedings in this case, I conclude that there is no support for plaintiff's accusations.

Plaintiff's contention that defendant is wrongfully withholding emails seems to be based on Bellinger's having received disparaging emails from Eric Schlesinger while working under his supervision that were not produced by defendant in discovery. While that may be so, it hardly

13

establishes that defendant made false statements or wrongfully withheld evidence. To the contrary, defendant's failure to produce emails that plaintiff has retained has been explained by defendant in the course of prior motion practice in this case.

During that prior motion practice, plaintiff was provided with information about the manner in which defendant stored emails, including its practice of allowing individual employees to exercise control over which email messages are stored. Plaintiff first moved to compel discovery of electronically stored information in 2007. More specifically, on July 9, 2007, plaintiff moved for an order permitting her to inspect and copy the hard drives of certain computers. Plaintiff's Memorandum of Law in Support of Motion to Compel, Docket Entry 34, at 1.[5] In opposition to plaintiff's motion, defendant submitted, among other things, sworn declarations of Michael Boatner, a computer specialist for NYRO, and Craig Brokes, a Branch Chief in SSA's Office of Telecommunications and Systems Operations. Docket Entries 40 and 41.[6] Boatner's declaration contains a fair amount of information about the operating systems, servers and email storage procedures followed at NYRO. Boatner Decl. ¶¶ 4-10. Of particular relevance here, Brokes' declaration explains that "each user decides how long to retain his or her email messages before they are deleted or purged, or whether to print or otherwise retain the message. Old messages are not automatically deleted or purged." Brokes Decl. ¶ 5.e.

As noted above, plaintiff has taken the depositions of the supervisor to whom she

---

[5] I denied plaintiff's motion after hearing oral argument on August 8, 2007. Tr. of 8/8/07, Docket Entry 45. Plaintiff appealed my ruling, which was affirmed. Memorandum and Order of United States District Judge Amon, Docket Entry 55.

[6] The Boatner and Brokes declarations are also attached as Exhibit K to the Affirmation of Elizabeth A. Mason, Esq., filed in support of plaintiff's pending motion to compel, Docket Entry 79.

attributes discriminatory animus – Schlesinger – and his decision-making supervisors – Corva and McGinley – and has thus had the opportunity to ask each of them about their practices with respect to retaining or deleting emails and other electronically stored documents. However, when plaintiff's counsel deposed Schlesinger – which took place several months after the Brokes declaration was filed – she did not ask Schlesinger detailed questions about his practices with respect to retaining or deleting emails. Rather, the questioning regarding Schlesinger's retention and storage of emails was limited to the following:

> Q: Did you write any letters while you were in your position?
>
> A: What do you mean "letters?" What kind of letters?
>
> Q: Any kind of letters/E-mails.
>
> A: Of course. I have lots of E-mails.
>
> Q: Did you leave those behind? Did you take any of those with you?
>
> A: Took none.
>
> Q: So you left those behind?
>
> A: That's correct.

Mason Aff., Ex. G at 13-14. While plaintiff contends that this testimony establishes that emails remain on Schlesinger's computer that have not been produced, the questioning does not address in any way whether Schlesinger retained or deleted the emails in question.

Furthermore, defendant has disclosed a substantial number of emails in discovery. As noted above, defendant has produced all emails accessible without restoring back-up tapes to or from plaintiff, or that refer to plaintiff, that were sent or received by Infiesta, Corva, McGinley and Schlesinger, and I have directed defendant to produce emails exchanged by Schlesinger and

15

McGinley over a period of three years; emails sent or received by any three co-workers identified by plaintiff over a one-year period; and emails sent or received by Steve Hunchik over a one-year period. During oral argument on the pending motion, counsel for defendant reported that substantial email production, even beyond the scope of my prior orders, had been made. Tr. of 7/20/09 at 37-38. Because plaintiff's counsel disputed that assertion, I asked defense counsel to confirm her representation, in writing with supporting documentation, after the argument. Defendant responded by submitting three letters, Docket Entries 97, 100, and 101, with attachments.

Defendant's first letter, dated July 23, 2009, Docket Entry 97, describes in substantial detail how defendant responded to plaintiff's various discovery demands calling for emails. The letter addresses several of plaintiff's document requests individually, and describes the documents produced or identified in response by Bates number. For example, defendant's letter describes how Eric Schlesinger's emails were searched by his successor, Stephanie Panas, for responsive documents in November and December of 2006 and March of 2007, and how more than 50 pages of printed emails were produced as a result of the search. The letter goes on to describe how, in 2009, Ms. Panas printed out every email in Schelsinger's email box, and that all responsive emails were produced or identified. Defendant's Letter dated July 23, 2009, at 2.

Defendant also complied with my instruction that supporting documentation be provided. Defendant's letter dated July 31, 2009, Docket Entry 100, included, for example, two declarations of Stephanie Panas, dated March 23, 2007 ("First Panas Decl.") and July 29, 2009 ("Supp. Panas Decl."), respectively. Panas, who was Schlesinger's successor and had access to whatever emails Schlesinger saved, confirms in her declarations that she searched those emails in

late 2006 and early 2007 for responsive documents, First Panas Decl. ¶ 3-6, and that, in 2009, she printed every email saved by Schlesinger and still in his email box, Supp. Panas Decl. ¶ 3. Defendant's second letter also transmitted declarations of others who conducted searches of email boxes, including but not limited to a declaration of John McGinley, describing his searches for emails and how he located and forwarded to defendant's counsel more than 3,000 printed pages of emails containing the names of either plaintiff or Schlesinger (McGinley Decl. ¶ 8); a declaration of Irene Corva, describing how she searched over 42,000 email messages on her computer and located more than 500 with references to plaintiff (Corva Decl. ¶¶ 7-10); a declaration of Charles Larson, describing how he located more than 660 pages of printed messages sent between plaintiff and himself (Larson Decl. ¶ 4); and a declaration of Julio Infiesta, describing how he searched his computer in 2006 and found 31 messages with references to plaintiff (Infiesta Decl ¶ 4).[7]  In light of this detailed description of who searched for emails, where they searched, when they searched and what they found, I see no basis for plaintiff's accusation that defendant has failed to search for and produce the emails she has demanded in discovery.

As suggested by the discussion above, defendant's explanation for failing to produce emails that plaintiff has in her possession is that, if those emails were sent or received at one time, they were subsequently deleted.  Plaintiff argues in response that federal agencies are required by regulation to retain emails, and seems to suggest that any emails defendant failed to produce must, therefore, exist.  The regulations plaintiff relies upon, however, do not impose the

---

[7]Defendant submitted a supplemental declaration of Julio Infiesta by letter dated August 6, 2009, Docket Entry 101.

mandate she suggests. First, the regulations apply only to "records" as defined in 44 U.S.C.

§ 3301. *See* 36 C.F.R. § 1220.14. Section 3301 defines "records" as materials "made or received

. . . in connection with the transaction of public business and preserved or appropriate for

preservation . . . as evidence of the organization, functions, policies, decision, procedures,

operations, or other activities of the Government." The emails at issue say such things as

"Charlie can approve you only clean and dust" and "We are going to make you look like a

patchwork doll/ How I get to NJ MT olive phone numbes [sic] in case I get lost." Mason Aff.

Ex. J. Whether such emails meet the statutory definition of records is, at best, highly debatable.

Second, even assuming the emails are "records," the regulations cited by plaintiff permit prompt

purging of emails of "short-term (transitory) value." *See* 36 C.F.R. § 1234.32. Finally, even if

the emails were records that, pursuant to the regulations, had to be maintained, it does not

necessarily follow that they were. In short, plaintiff's "basis for believing that these [emails] do

exist is simply that she believes they should exist," and that is an insufficient basis for

concluding that they have been withheld. *See* Memorandum and Order of United States District

Judge Amon, Docket Entry 55, at 3.

Finally, plaintiff has not established that she has been prejudiced as a result of

defendant's alleged failure to produce emails responsive to her discovery demands. Although

plaintiff asserts that Schlesinger sent her several inappropriate emails, she has not described any

that she recalls receiving but did not maintain herself, or that Schlesinger has denied sending to

her. Nor has plaintiff identified a single email she did not already possess and saw for the first

time in discovery that reveals discriminatory animus or otherwise lends substantial support to her

claims.[8]  Plaintiff's failure to identify a single email useful to her case, despite the substantial

email discovery that has already taken place, strongly suggests that further email discovery would

not be fruitful.

With respect to Interrogatory 24, defendant has already produced letters issued to Infiesta,

Corva, McGinley and Schlesinger directing them to retain relevant records.  Def. Mem. of Law at

40-41.

For all these reasons, plaintiff's motion to compel answers to Interrogatories 13 though

22 and 24 is denied.

## C.    Civility and Advocacy

As a review of the docket sheet in this action makes plain, the orderly and efficient

progress of this case has been impeded by the failure of counsel to work together productively

and treat each other civilly.  Indeed, although fact discovery was originally scheduled to close by

October 1, 2006, see Minute Entry for Initial Conference Hearing held on June 15, 2006, it

remains uncompleted.  Of even greater concern, the manner in which counsel have litigated their

---

[8]During the oral argument on the pending motion, plaintiff complained that defendant
produced emails in paper rather than electronic form, and asserted that she was entitled to receive
defendant's emails in their original, electronic form.  Tr. of 7/20/09 at 41.  I then asked defendant
to submit a letter explaining why production in paper rather than electronic form was appropriate.
*Id.* at 43.  To the extent plaintiff's statement might be construed as a motion to compel a further
round of email production in electronic form, it is denied for the following reasons.  First,
production may be made "in any medium from which information can be obtained" or that is
"reasonably usable."  FED. R. CIV. P. 34(a)(1)(A) and (E)(ii).  Second, defendant has explained
the reason for production in paper form, and why it would be burdensome to produce the emails
in electronic form.  Defendant's Letter dated August 6, 2009, Docket Entry 102.  Finally,
plaintiff's counsel has apparently already familiarized herself with defendant's email production
in paper form, and it would therefore be redundant and wasteful to require defendant to produce
the emails again in electronic form; indeed, a party "need not produce the same electronically
stored information in more than one form."  FED. R. CIV. P. 34(E)(iii).

repeated disagreements over the proper scope of discovery in their papers and during oral arguments has been unnecessarily harsh. As but one example among many I might cite, Plaintiff's Reply Memorandum of Law in Further Support of Her Motion to Compel and For Sanctions accuses counsel for defendant of making "frivolous and disingenuous" representations, advancing "preposterous notions" and "trying to create a smokescreen she can hide behind." Docket Entry 91, at 15.

I urge counsel to review and carefully consider a recent decision by Senior United States District Judge Glasser, in which he wrote:

> The suggestion that it would somehow negatively impact the zealousness of legal representation if adversaries conducted themselves with civility is utterly specious. Zealousness does not entail being abusive or using inflammatory language. Far too often is the phrase "zealous advocacy" used as a shield to defend discourteous or combative litigation tactics from censure when, in truth, incivility vitiates effective advocacy.

*Gortat v. Capala Brothers, Inc.*, Memorandum and Order dated June 3, 2009, entered as Docket Entry 136 in 07-Civ-3629, at 27-29.

## D. Scheduling of Remaining Discovery and Motion Practice

During a conference held on October 15, 2008, I ordered that fact discovery be completed by January 15, 2009. Obviously, that deadline has passed. While plaintiff intends to take a small number of additional depositions, Tr. of 7/20/09 at 6-8, she reasonably deferred conducting them while her motion to compel answers to interrogatories remained pending.

Litigation over document demands and interrogatories has now been completed. Fact discovery is now limited to the few remaining depositions plaintiff states she intends to take. The parties shall confer and attempt to agree on dates for completing those depositions by

October 16, 2009. Counsel shall submit a letter, identifying the remaining deponents and the dates on which their depositions will be held, by September 3, 2009. If counsel cannot agree upon dates, plaintiff will submit a list of deponents, and the Court will issue a schedule.

Defendant has indicated an intention to seek summary judgment. It is the court's understanding that, although plaintiff contemplates presenting expert testimony at trial, expert testimony is not pertinent to the issues that will be raised by defendant's summary judgment motion. Accordingly, and with depositions scheduled to be completed by October 16, defendant shall submit an application for a pre-motion conference, as called for in Section 3.A of the Individual Motion Practices and Rules of United States District Judge Amon, no later than October 30, 2009. Expert discovery will be scheduled if plaintiff's claims survive the motion.

### Conclusion

For the reasons stated above, plaintiff's motion to compel and for sanctions is denied. Fact discovery will be completed by October 16, 2009, and defendant will seek a pre-motion conference by October 30, 2009.

SO ORDERED.

_____/s/_____
STEVEN M. GOLD
United States Magistrate Judge

Brooklyn, New York
August 13, 2009
U:\bellinger m&o 081409.wpd

21