```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
CELIA BELLINGER,

         Plaintiff,
                                                              MEMORANDUM
      - against -                                             AND ORDER
                                                              CV-06-321 (CBA)
MICHAEL J. ASTRUE, Commissioner
of Social Security,

         Defendant.
----------------------------------------------------------X
```
*Gold, S., U. S. Magistrate Judge*:

## Introduction

Plaintiff brings this lawsuit pursuant to Title VII of the Civil Rights Act claiming she was discriminated against because of her gender. Plaintiff's complaint asserts two causes of action, one contending that plaintiff was denied a promotion and a second alleging she received unequal pay. Compl. ¶¶ 90-112; Tr. of Jan. 26, 2009, Docket Entry 73, at 11. The underlying facts alleged by plaintiff in support of her claims are set forth in a Memorandum and Order dated August 13, 2009, Docket Entry 103, and are not repeated here.

Plaintiff has moved to compel responses to her Second Request for Production of Documents dated December 4, 2008. Docket Entries 109 through 112. Plaintiff's demands were discussed at length during two previous discovery conferences. *See* Tr. of Jan. 30, 2009, Docket Entry 74 and Tr. of Apr. 20, 2009, Docket Entry 80. Defendant has filed its opposition to plaintiff's motion, Docket Entries 115 through 120, and plaintiff has replied, Docket Entries 121 through 122. In its opposition, defendant organized the demands in contention into categories, and plaintiff largely adopted defendant's categories in her reply. I address each group of demands in turn below.

**Discussion**

A.  **Requests for "Automated Personnel Information" (Document Requests 10, 13, 30, 35, 43, 45, 47, 49, 52)**

The first set of document requests in dispute seeks electronically stored personnel data concerning several individuals. Pl. Mem. at 16. Defendant has produced its official personnel files, created and maintained in paper form, for each of these individuals. Tr. of Jan. 30, 2009 at 18. The dispute between the parties centers around defendant's assertion that the electronically stored data sought by plaintiff either does not exist or cannot be retrieved in the manner plaintiff seeks, and plaintiff's insistence that defendant is wrong.

*1) HRMIS* and *HRODS*

Plaintiff first demands that defendant retrieve information from its Human Resources Management Information System ("HRMIS"), a database that defendant acknowledges it uses. Def. Mem. at 15. During the conference held on January 30, 2009, I directed defendant to provide any data that could be retrieved from HRMIS by searching for plaintiff's name, social security number, or other identifying number. Tr. of Jan. 30, 2009 at 87-88. Subsequently, defendant reported that, although specific queries may be submitted to HRMIS, information can not be retrieved by employee name, social security number, or other identifier. Def. Mem. at 15.

At a further discovery conference held on April 20, 2009, defendant reiterated that data cannot be retrieved from HRMIS by employee name or social security number, and that, instead, specific queries must be made. Tr. of Apr. 20, 2009 at 11. Upon learning this information, I directed defendant to provide plaintiff with a list of fields that could be queried in HRMIS and to run any queries (with certain exceptions not relevant here) sought by plaintiff. Tr. of Apr. 20,

2

2009 at 17-18. Defendant asserts – apparently without contradiction – that, as I directed, plaintiff was "apprised of the specific categories of information that can be retrieved from HRMIS using appropriate query methods" but "never requested that any specific queries be done for anyone." Def. Mem. at 19. Instead, plaintiff brings this motion, demanding – despite defendant's repeated representations that it cannot be done – that HRMIS data be gathered by employee name or identification number and then produced. Having made this choise, and given the extensive discovery to date and the ample opportunity provided to plaintiff to query the database, plaintiff should not be permitted to propound new demands now, asking that queries be run, when the close of discovery is finally in sight.

Plaintiff also seeks to compel the disclosure of information from a database known as the Human Resources Operational Data Store, or HRODS. Pl. Reply ¶ 23. However, the very documentation plaintiff relies upon to demonstrate that HRODS data should be available states that HRODS was, as of October, 2009, "under evaluation and development as a potential successor to HRMIS." Pl. Ex. 33, Docket Entry 112-14, at 2. In addition, during one of the court conferences addressed to plaintiff's document demands, counsel for defendant represented that "HRODS is a platform for accessing the HRMIS" and not a separate database. Tr. of Apr. 20, 2009 at 10.

There is no indication in the extensive record before the Court that defendant has now implemented HRODS in lieu of HRMIS, or that HRODS in its current form permits retrieval of data other than pursuant to the field-based inquiries I permitted but which were never pressed. For all these reasons, to the extent plaintiff's motion seeks to compel disclosure of HRMIS or HRODS data, the motion is denied.

*2) EHRI and CPDF*

The second aspect of plaintiff's motion seeks Central Personnel Data Files ("CPDF") and Enterprise Human Resources Integration ("EHRI") data. Defendant asserts that "SSA has not yet implemented the EHRI" and does not have CPDF information. Def. Mem. at 14-15. Plaintiff, however, has submitted documents indicating that the United States Office of Personnel Management ("OPM") instituted a government-wide "Enterprise Human Resources Integration initiative" no later than 2006, Pl. Ex. 28, Docket Entry 112-5, at 2, and that CPDF reporting by government agencies is part of that initiative, Pl. Ex. 31, Docket Entry 112-10. The documents submitted by plaintiff further indicate that "CPDF is used to provide human resources and demographic information on each Federal civilian employee." Pl. Ex. 32, Docket Entry 112-11, at 1 (apparently issued some time in 2007).

The statements contained in the exhibits submitted by plaintiff appear to be inconsistent with defendant's assertion that it does not maintain CPDF information and has not yet implemented the EHRI initiative. It may be that defendant continues to use only paper files and the HRMIS database and that, as asserted, there is no EHRI of CPDF data. However, it is also possible that defendant viewed its obligation to gather responsive documents too narrowly and produced only those electronic or hard copy documents in its actual possession and not data stored or maintained on its behalf by other agencies. My concern that this may be the case stems from my review of the exhibits cited above, which appear to indicate that EHRI and CPDF are in place, as well as the statement in defendant's memorandum of law that "SSA did not use either the EHRI or the CPDF, *which appear to be OPM systems*." Def. Mem. at 17 (emphasis added). Of course, if the data plaintiff seeks about defendant's employees exists, but is maintained by

4

OPM and not defendant, then – assuming defendant has access to the data – it constitutes electronically stored information in defendant's "possession, custody or control" and must be produced. FED. R. CIV. P. 34(a)(1).

For these reasons, I direct counsel for defendant to determine whether OPM has EHRI or CPDF data for defendant's employees. If OPM has EHRI or CPDF data with respect to the persons that are the subject of plaintiff's demands, that data must be produced within two weeks. If the data does not exist, defendant shall submit an affidavit from a person or persons with knowledge that explains the apparent inconsistency between the exhibits referenced above and the absence of the electronically stored information described in those exhibits.

B.  **Requests for Other Personnel Information (Document Requests 9, 12, 29, 34, 43, 45, 47, 49)**

This group of requests seeks production of various hard copy personnel records. Defendant points out that it has produced a substantial number responsive documents, including its Official Personnel File for each of the employees in question, various performance evaluations it was able to locate, and training records for certain employees. Def. Mem. at 21-23. Defendant contends that there are no other responsive documents. Plaintiff asserts that additional responsive documents exist and that, if they do not, defendant should be required to explain what happened to them.

It appears that the primary dispute between the parties concerns what they refer to as the Employee Performance Files. *See* Pl. Reply ¶¶ 27-28. Defendant acknowledges that plaintiff sought these files, and does not contend that they are not properly discoverable. Def. Mem. at 20 *et seq*. In the face of plaintiff's argument that defendant destroyed these files or refuses to

produce them, defendant represents that it has "produced the extant performance evaluations, which are maintained in the SF 7-B files." Def. Mem. at 21.

The parties have not submitted the actual personnel files produced by defendant in discovery. Thus, I have no way of knowing what documents were actually produced, and whether defendant has failed to provide documents that an employer might reasonably be expected to have on hand. According to plaintiff, documents that should have been produced but were not include written performance evaluations. It is difficult to imagine that an employer would not maintain written performance evaluations of its employees. Moreover, retention of Employee Performance Files, including performance evaluations and other documents sought by plaintiff, appears to be required by agency policy. Pl. Ex. 27, Docket Entry 112-1, at 6, 8. On the other hand, as noted above, defendant contends that the relevant performance evaluation documents have been produced as part of the SF 7-B files provided in response to plaintiff's demands.

For these reasons, if defendant has produced a full set of written performance evaluations and the other documents required to be maintained in an Employee Performance File, whether organized into such a file or not, defendant shall, within two weeks, so advise the Court and identify the documents produced by date of production and Bates number. If those documents have not been produced, defendant shall, within two weeks, submit an affidavit from a person with knowledge explaining why those documents are not available, and why their retention was not required by the Operational and Administrative Records Schedules submitted by plaintiff. *See* Pl. Ex. 27 at 6, 8. If defendant has already provided plaintiff or the Court with an affidavit or other documentation explaining why performance evaluations have not been produced, defendant

may comply with this aspect of the instant Order by submitting a second copy of the previously provided written explanation.

C.  **Requests for Emails (Document Requests 11, 14, 15, 20-28, both 31, 32, 36, 40, 41, 44)**

Plaintiff next contends that defendant has failed to conduct a proper search for emails responsive to her requests. Defendant's search for and production of emails has been the subject of extensive litigation in this case, and many of plaintiff's arguments have already been considered and rejected. *See* Tr. of Aug. 8, 2007, Docket Entry 45; Mem. and Order of District Judge Amon, Docket Entry 55; Mem. and Order dated Aug. 13, 2009, Docket Entry 103, at 11-19. In my most recent decision on the subject, I pointed out that defendant has established that it conducted reasonable searches of the email boxes of Eric Schlesinger, who figures prominently in plaintiff's allegations, as well as those of several others – John McGinley, Irene Corva, Charles Larson and Julio Infesta – who exercised decision-making or supervisory authority with respect to the events at issue in this case. Mem. and Order dated Aug. 13, 2009 at 16-17. Moreover, plaintiff has taken depositions of the individuals most involved in the events giving rise to her claims and has had the opportunity to question them about their practices with respect to email as well as the facts pertinent to her claims. Mem. and Order dated Aug. 13, 2009 at 15; Def. Mem. at 45-46. Finally, although plaintiff argues vehemently that defendant has refused to comply with Court orders directing that searches be conducted for certain emails and that they be produced, *see, e.g.,* Pl. Reply ¶¶ 36-47, defendant states that many of the emails in issue were previously produced, that additional searches *were* conducted, and that a substantial number of responsive emails have been available for plaintiff's inspection at the offices of defendant's

counsel for many months, but that plaintiff has not come to review them, *see* Def. Mem. at 27-39.

Plaintiff's primary argument, at least in her reply submission, is that defendant has failed to search the email boxes of her co-workers. Pl. Reply ¶¶ 36-40. As indicated in my previous Memorandum and Order, it appears that Eric Schlesinger deleted relevant emails. Mem. and Order at 17. While defendant represents that it searched Schlesinger's emails and those of four supervisors for responsive information, it is unclear whether defendant complied with my order that it search the emails retained by certain other relevant individuals referred to by the parties as the "five comparators plus Hunchit (sic)." Tr. of Jan. 30, 2009 at 37. For example, with respect to Steve Hunchik, a co-worker who, according to plaintiff, received more favorable treatment than she did, defendant writes:

> In Defendant's Second Supplemental Document Requests, Defendant responded by producing or identifying the responsive Word documents that were located on Hunchik's hard drive (his computer was retained) and emails contained *in Schlesinger's emailbox* that were responsive . . . .

Def. Mem. at 40. Defendant responded in similar fashion with respect to plaintiff's demand for emails between Schlesinger and plaintiff's other co-workers. Def. Mem. at 42 (indicating that defendant "printed out and reviewed every email in Schlesinger's emailbox"). Accordingly, defendant shall indicate whether the email boxes of these six individuals (the "five comparators" and Hunchik) were searched and if so, whether responsive emails were produced. If the email boxes of these six individuals were not searched, defendant shall either conduct the searches and produce the responsive emails within thirty days, or explain – by affidavit from a person with knowledge submitted within two weeks – why the searches did not take place and cannot be

conducted now.[1]

Plaintiff also seeks an order to requiring defendant to produce emails in their native format. Although, as plaintiff notes, I may at one point have directed defendant to produce emails in native format, I subsequently permitted defendant to explain why it chose instead to produce emails in hard copy form. Tr. of July 20, 2009 at 43. Defendant did so, and explained that it chose to print out the emails so that they could more easily be reviewed for responsiveness and privilege. Def. Mem. at 43-45; Def. Ex. CC. This explanation is reasonable, and under these circumstances, I see no reason to require production of the emails in native format.

Finally, plaintiff demands information about how searches for responsive emails were conducted. Pl. Reply ¶ 47. I have already considered and rejected plaintiff's motion to compel interrogatory answers directed to the same information. Mem. and Order dated Aug. 13, 2009 at 11-19.

## D. Requests for EEO Reports (Requests 6 to 8)

Requests 6 through 8 are not discussed in plaintiff's reply submission. I therefore conclude that plaintiff does not challenge defendant's response with respect to these requests. Def. Mem. at 46-52.

---

[1] During one of the many discovery conferences held in this case, defendant represented that the email boxes of Hunchik and the other co-workers in issue are no longer available. Tr. of Apr. 20, 2009 at 28. In its memorandum in opposition to plaintiff's motion, however, defendant states that Hunchik's computer was retained and that defendant searched the computer for responsive documents. Def. Mem. at 40. It is the Court's understanding that defendant would explain this apparent discrepancy by pointing out that its employees did not store emails on the hard drives of their computers. *See* Def. Mem. at 66. Nonetheless, any assertion that a search of the email boxes of Hunchik and the other co-workers cannot now be performed should explain more precisely why that is the case.

E.     **Requests for Document Retention Policies (Requests 76, 77, 79 and 80)**

Plaintiff's Request Number 76 seeks

> document retention policies for all of the documents that have been requested in this matter, including but not limited to Document Retention policies governing all personnel, administrative, CREO, EEO, Discrimination claims, MOPP, electronic mail, e-Mail, computer generated documents, and all other documents requested by plaintiff in this matter, including but not limited to EEO Records, Human Resource Records, Administrative Records, Personnel Records, Electronic Records, E-Mail records, Correspondence, faxes Records, MOPP records, Supervisory Records, and Word Processing Records.

Request Number 77 seeks a similarly broad range of documents describing defendant's "archiving procedures," "disk or tape labeling conventions," "backup rotation schedules" and other procedures with respect to the emails and word processing documents of various named employees. Request 79 is also similarly broad, and demands all documents concerning "policies, procedures and guidelines related to defendant's computers, computer systems, electronic data and electronic media." Finally, Request Number 80 seeks organizational charts for the defendant's regional information technology personnel.

These requests seek documents that are not relevant to any party's claim or defense, and the burden of responding to them in full would clearly outweigh the likely benefit that production might afford. *See* FED. R. CIV. P. 26(b)(1) and (2)(C)(iii); *see also* Mem. and Order dated Aug. 13, 2009 at 13. Moreover, defendant has produced documents responsive to Request Number 76, including agency policy manuals. Def. Mem. at 53-54. (Plaintiff describes some difficulty accessing some of the material produced by defendant in electronic form. Pl. Reply ¶ 71. The Court expects counsel to work together to ensure that plaintiff's attorney is able to gain access to this information.) Defendant has also produced affidavits of two of its information technology

10

employees responsive to questions raised by plaintiff, *see* Mem. and Order dated Aug. 13, 2009 at 14, and this Court has never precluded plaintiff from deposing any of defendant's information technology personnel. For these reasons, plaintiff's motion to compel additional responses to these demands is denied.

F.     **Requests for Additional Searches of Email Boxes (Requests 85 through 88)**

Plaintiff next demands that defendant search the email boxes of employees McGinley, Infiesta, Freeburn and Corva, listing numerous terms for which she seeks to have searches conducted. The breadth of plaintiff's demands, and her use of common terms with the potential to yield a substantial number of irrelevant documents, are plain from a review of Document Request 85, which reads as follows:

> Produce for inspection all email strings with their attachments for the following email requests, certifying that a reasonable search was conducted in all accessible places where computer generated information is archived, stored, and retained, including defendant's: a) centralized email server at the ROCC in Jamaica ROCC, b) McGinley's hard drive(s) of his desktop computer and notebook computer and c) all other places where computer generated documents are archived, kept or stored including all other servers.
>
> Search 1. All Email strings, and attachments sent directly from John McGinely (*sic*) to anyone containing Celia Bellinger's name in whole or in part by her Employee Identification Number for the period of January 1, 2002 to January 31, 2006
>
> Search 2. All Email strings and attachments sent directly from John McGinley or directly to John McGinley containing the search terms "energy lady" or "maven" or "temporary position" or "princess" or "discrimination" or "EEO" or "CREO" or "shamu" or "ass" or "tits" or "disciplinary" or "discipline" or "warning" or "complainant" or "061-05NY" or "disparate" or "counseling" or "6B201" or "Molly" or "1D251" or "95U530" or "Investigator" or "affidavit" or "plaintiff" or "defendant" for the time period of January 1, 2005 to January 31, 2006.
>
> Search 3. All email strings and attachments sent directly from John McGinley to

11

Eric Schlesinger containing the search terms "energy lady" or "maven" or "temporary position" or "princess" or "incumbent" or "discrimination" or "complaint" or "complained" or "EEO" or "investigate" or "investigation" or "investigator" "CREO" or "shamu" or "Steve Hunchik" or "Hunchik" or "ass" or "FTE" or "disciplinary" or "discipline" or "reprimand" or "warning" or "Chung" or "Schmidt" or "complainant" "or "plaintiff" or "defendant" or "vacancy announcement" or "061-05NY" or "disparate" or "counseling" or "selectees" or "Chung" or "Schmidt" or "6B201" or "Molly" or "1D251" or "95U530" for the time period of January 1, 2002 to January 31, 2005.

Search 4. All email strings and attachments from directly John McGinley to Irene Corva containing the search terms or "temporary position" or "princess" or "support service specialist" or "incumbent" or "discrimination" or "complaint" or "complained" or "complained of" or "EEO" or "CREO" or "investigate" or "investigation" or "investigator" or "ass" or "discipline" or "disciplinary" or "warning" or "Chung" or "Schmidt" or "complainant" or "061-05NY" or "disparate" or "counseling" or "selection process" or "selectees" or "selected" or "6B201" or "Molly" or "1D251" or "95U530" for the time period of January 1, 2005 to January 31, 2006.

Search 5. All email strings and attachments sent from John McGinley directly to Julio Infiesta containing the search terms "temporary position" or "princess" or "discrimination" or "complaint" or "complained" or "investigate" or "investigation" or "CREO" or "EEO" or "ass" or "tits" or "legs" or "disciplinary" or "warning" or "discipline" or "reprimand" or "061-05NY" or "disparate" or "counseling" or "selection process" or "selectees" or "6B201" or "Molly" or "Mavis" or "1D251" or "95U530" for the time period of January 1, 2003 to January 31, 2005.

Search 6. All email strings and attachments sent from John McGinley directly to anyone in Civil Rights & Equal Opportunity (CREO) containing the search terms "energy lady" or "maven" or"temporary position" or "princess" or "discrimination" or "complaint" or "plaintiff" or "defendant" or "complained" or "EEO" or "Mavis" or "investigate" or "investigation" or "position description" or "shamu" or "ass" or "disciplinary" or "discipline" or "warning" or "reprimand" or "Chung" or "Schmidt" or "Bellinger" or "complainant" or "vacancy announcement" or "6B201" or "Molly" or "Schlesinger" or "1D251" or "95U530" for the time period of January 1, 2002 to December 31, 2006.

Search 7. All email strings and attachments sent from John McGinley to anyone in the Human Resources Center containing the search terms "temporary position" or "princess" or "discrimination" or "complaint" or "complained" or "investigate" or "investigation" or "ass" or "disciplinary" or "discipline" or "warning" or

> "reprimand" or "complainant" or "1D251" or "95U530" or "plaintiff" or "complainant" for the time period of January 1, 2005 to January 31, 2006.

The breadth of these requests is particularly striking because the email boxes of at least Schlesinger, McGinley, Infiesta and Corva have already been searched based on earlier requests propounded by plaintiff. Moreover, defendant has produced affidavits from McGinley, Infiesta and Corva in response to questions previously raised by plaintiff about the thoroughness of the searches they conducted, Pl. Exs. 38, 39 and 42, Docket Entries 112-20 and 21, and plaintiff has deposed Schlesinger, McGinley, Corva, and Infiesta, Def. Mem. at 45-46. Plaintiff's earlier demands called upon defendant to review the email boxes of each of these individuals with certain search criteria in mind, and required defendant's counsel to review the results for privileged and non-responsive information. A substantial number of emails were produced in response to plaintiff's original demands, many of which apparently required redaction. *See, e.g.*, Def. Ex L at 9 *et seq.;* Pl. Reply ¶ 82 (noting that defendant has already produced *more than seven thousand* emails). Plaintiff offers no reason for propounding this broad range of new search terms now, long after the initial searches were conducted and the results culled. Requiring another round of extensive searches and review of the results by defendant's counsel at this stage of the case would be needlessly burdensome and cumulative. Accordingly, plaintiff's motion to compel compliance with requests 85 through 88 is denied.

**G.     Sanctions**

Each side asks the Court to impose sanctions on the other. I decline to do so. Sanctions are not appropriately imposed on defendant because I have, for the most part, denied plaintiff's motion. I decline to impose sanctions on plaintiff because I have granted plaintiff's motion in

13

part, and because it appears that at least some of the motion practice results from defendant's failure to retain all relevant documents and the apparent inconsistencies between information culled from Internet sources by plaintiff and the representations made by defendant.

H.      **Scheduling of Remaining Discovery and Motion Practice**

As I have previously noted, discovery is complete, with the exception of a small number of depositions that have not yet been scheduled. Once the documents or affidavits required by this Memorandum and Order have been provided and all appeals from my discovery rulings have been resolved, plaintiff shall have sixty days to conclude depositions of all fact witnesses. Defendant shall then seek a pre-motion conference in connection with its anticipated motion for summary judgment, or advise the Court that it no longer intends to bring a summary judgment motion, no later than thirty days after the conclusion of fact discovery. The Court will set a schedule for expert discovery if the case survives the motion.

## Conclusion

For the reasons stated above, plaintiff's motion to compel is denied, except that:

1. Counsel for defendant shall determine whether OPM has EHRI or CPDF data for defendant's employees. If OPM has EHRI or CPDF data with respect to the persons that are the subject of plaintiff's demands, that data must be produced within two weeks. If the data does not exist, defendant shall submit an affidavit from a person or persons with knowledge that explains the apparent inconsistency between the exhibits referenced above and the absence of the electronically stored information described in those exhibits;

2. If defendant has produced a full set of written performance evaluations and the other documents required to be maintained in an Employee Performance File, whether organized into such a file or not, defendant shall so advise the Court, and shall identify the documents produced by date of production and Bates number. If these documents have not been produced, defendant shall, within two weeks,

submit an affidavit from a person with knowledge explaining why those documents are not available, and why their retention was not required by the Operational and Administrative Records Schedules submitted by plaintiff. If defendant has already provided plaintiff or the Court with an affidavit or other documentation explaining why performance evaluations have not been produced, defendant may comply with this aspect of the instant Order by submitting a second copy of the previously provided documentation; and

3. Defendant shall indicate whether the email boxes of the five comparators and Hunchik were searched and if so, whether responsive emails were produced. If the email boxes of these six individuals were not searched, defendant shall either conduct the searches and produce the responsive emails within thirty days, or explain – by affidavit from a person with knowledge submitted within two weeks – why the searches did not take place and cannot be conducted now.

The parties' respective motions for sanctions are denied.

SO ORDERED.

_____/s/_____
STEVEN M. GOLD
United States Magistrate Judge

Brooklyn, New York
April 1, 2010

U:\bellinger m&o doc demands.wpd